Good morning, your honors. May it please the court, Jay Nelson on behalf of Miguel Hernandez-Fuentes. I'll do my best to watch my own clock and I'll try to reserve two minutes for rebuttal. With the time that I have, your honors, I'd like to try to address both of our principal claims for relief. First, the factual error and second, the guidelines issue. With respect to the factual issue, your honors, assuming for today's argument that plain error review applies, we satisfy all four prongs of the test. First, the district court mistakenly said in direct contravention of the PSR that he didn't see in the PSR any reference to Mr. Hernandez-Fuentes' domestic work record. It's flatly contradicted by PSR paragraph 40. Second, the error was clear and obvious within the meaning of the recitation in the PSR, Mr. Hernandez-Fuentes personally referred to his work in the United States as a central component of his own sentencing allocation. Please help me. Can you clarify something for me? I my notes on the record indicate that the judge was well aware that Mr. Hernandez-Fuentes had worked in the United States. At E.R. 16, he said, I don't know what he was doing when he was working in the United States, but he was certainly committing very serious offenses when he was in the United States as well. Your honor, I believe that was the government. I'm sorry? I believe that was government counsel, your honor. You don't think that was the judge? That was E.R. 16, your honor? Yes. Uh-huh. Okay. Well, perhaps my reading was incorrect then. I thought it was the district court. Well, let's say that it's the government's counsel. The court was aware from what the government counsel said that he had worked in the United States. I guess I'm troubled by the fact that I don't know what difference in this particular case, whether he worked or didn't work in the United States, had on the ultimate result here. Sure, your honor. Help me with that, would you please? Sure, of course. Because the district court spoke almost directly in the language of plain error review, your honor. The test from Joseph that we've cited in our brief says that there has to be a reasonable probability of a different result. And the district court almost spoke in that precise language. He said at E.R. 18, Mr. Hernandez, quite frankly, I would probably be a lot more sympathetic to your position if your record showed that you came to the United States, you stayed out of trouble, and you had a record of employment. But then, I mean, with the emphasis the court gave was on the stayed out of trouble, the court goes on to talk about more troubling, what I see is while you're here is a criminal history that puts other people at risk, and then goes on to say, and then your 2013 conviction is quite troubling to the court. And then he goes on to say, you're not willing to conform to the laws of the United States that are not immigration while you're here, and you thus put other people at risk. And never again mentions employment. So even if he erred in mentioning the lack of a record of the court's colloquy is, or the court's statement is about his concern about the criminal history, which is significant. So it was hard for me to see why any error the district court made in characterizing the employment history wasn't harmless in context. You know, on E.R. 20, the judge explicitly explained why he was rejecting my client's request for downward variance. He says, I'm not going to vary downward in this case. I don't think there are, although there are 3553A factors that would ordinarily warrant a downward variance. So we're starting there with a presumption in the district court's mind that there would ordinarily be a variance here. He says, there are other 3553A factors, plural, Your Honor, that certainly do not mitigate in the defendant's favor, and those are the factors, plural, that I put on the record. And there are two factors there. One is the lack of employment history in the United States, and the other one is the two prior convictions. And so what it tells us about the district court's analysis, Your Honor, is that he viewed Mr. Hernandez-Fuentes as a person who came to the country and not only committed crimes, but was also unproductive and didn't contribute to society while at the same time as committing the two prior offenses. So if you take out that half of the analysis, the domestic employment, his view of Mr. Hernandez-Fuentes could within a reasonable probability have changed. Is there any case law in the Ninth Circuit in which a finding of prejudice when an error makes up one of multiple factors leading a court to impose a particular sentence, is there any case you can point to where there's more than one factor and there's an error on one factor and the court finds that that's prejudicial? You know, I can't think of a case off the top of my head that answers that direct question, but I think if we take the rationale to its logical conclusion, I mean, no sentencing judge in the history of judicial conduct has ever said 100 percent incorrect things at a sentencing hearing. I mean, when there's error, it's coupled with... I'm not sure you're right about that. Not in my more limited experience, Your Honor. And I'm not going to comment on that. Thank you. Yes, I understand. So I don't think the standard is that a district court has to be, you know, super-duper wrong about lots of stuff to be overly colloquial. I think the standard is if there's an error, this is half of the district court's analysis for why he refused a downward variance. But, counsel, with respect, the court sentenced your client to the bottom of the guidelines. Right. What your argument is, is that he might have varied downward. Well, he said he would have. He said on ER-20, there are factors that ordinarily would warrant a downward variance, but there are these two things, there are these two reasons why not. Okay. So we're left then with weighing whether the one factor alone would have been enough for the judge not to vary downward. How do we possibly measure that? Under the reasonable probability standard. How does it fit in plain error review? I don't see how we do that. Because he spoke in the language of plain error review. He said, I would probably be more sympathetic to your position, but for these two factors. So if you take one of those, excuse me, one of those factors out, then you have a reasonable probability. And Joseph is clear on the Joseph case, that we're not guessing and we're not trying to put words in the district court's mouth. We're sort of theorizing, is there a reasonable probability he might have went down a month, two months, maybe a few weeks? How much, even taking your point, how do we know how far he would have gone? Would he have said, well, maybe I should do it, maybe I shouldn't. No, I'm not going to do that. I had a bad breakfast. You know, what — how do we measure this thing? I don't know how we do. I don't think you have to guess at how long. And I think the Joseph case, Your Honor, the case law is clear. You don't have to guess about exactly what he would have done. But which factor — I'm just — I don't have my copy of 3553 here. So what factor does the lack of employment relate to in 3553A? Personal history and characteristics, Your Honor. Okay. So you think that the — even though he only mentions that once, you think that that was one of two major factors in the district court's analysis? Because as I mentioned, he goes on quite — for quite some time talking about the prior convictions. He says the court relied heavily on Hernandez-Fuentes' prior convictions, calling them quite troubling. That's true. I mean, he emphasized — he emphasized both of them. He emphasized both. But he only mentions the employment once, whereas he talks at great length about the prior convictions. I think it's notable, Your Honor, that he went out of his way to bring up the employment issue. That was on the judge's — we know it was on the judge's mind because he brought it up. And so to say that now he wouldn't — it wouldn't have made a difference, I think that's incorrect because he brought it up. Does your case depend on employment being as important to the judge as the prior convictions No, it just has to be — it has to be a significant factor in the judge's analysis, which it is because he brought it up. He said it was. He said it was important. And I'm running out of time, Your Honor. I would like to — You are. Well, you're down in your two minutes. I know. You can go all the way through if you want. But if you want to save some time, then you better sit down. I'll do that. Thank you, Your Honor. Okay. Great. Good morning. Good morning, judges. May it please the Court, Lori Price for the United States. The defendant has not proven that the district court committed error, much less plain error, when he did make that single statement about the employment record at sentencing. The defendant's entire argument on this point is based on a single sentence in the pre-sentence report that is uncorroborated and lacking in any kind of real detail. There's no detail in that sentence. Basically, the defendant told the probation officer, I've had four jobs while I've been in the United States. This is a defendant that had been in the United States at that point more than 25 years. He'd been there since 1988. There's no information about employers that the defendant may have worked for, no information about wages he may have made, no information about duration that he worked at jobs or dates he worked at jobs. So from the Court's perspective, what your response in part is, is that so the Court picked this up, but the reality is that the defendant in this case did not come up with any information to verify the fact that he was or had been employed in the United States. Is that correct? That's correct, Your Honor. And what the Court had before it was the single sentence in the pre-sentence report with the vague description, hey, I've worked four jobs. And then it had all these specific details about what the defendant had been doing while he was in the United States. But the Court did, erroneously, did it not, say there was nothing in the record to support employment in the United States? Because there was something in the record. There was the PSR. There was the – Your Honor, he did make that statement, yes. I would not say that that was an error. I would distinguish it, because I think that in the context of the conversation, what the district court was talking about was an employment record, a history of the defendant actually working in the United States, not just a single statement made in the pre-sentence report. And during the sentencing, although it doesn't contain much specific information, the defendant even said to the judge, I've been here for more than half of my life, this is that ER-14, and I have my children here, I have my wife here, my work. I have a way to earn a living here. I know how to earn a living here. It seems like the defendant is even indicating that he's worked here. I would agree that the defendant was indicating that he had worked here. And then the prosecutor made the statement referenced by Judge Smith, where the prosecutor said, I don't know what work he's been doing here, but here's what we know about the criminal history with the felonies, with the drugs and guns. And the court had all of that information before it when it was considering, has this defendant been a productive member of society? And the court concluded, no, he — I don't have the evidence, in fact, that he has been a productive member of society. Kagan. So are you saying that when the district court said, and that there wasn't evidence, the record didn't show that he had a record of employment, that he was referring to something more substantial, that more evidence than what was in the record, as opposed to saying there was no evidence of employment at all? That's correct, Your Honor. I'm talking about a broader — I'm talking about the district court making a broader comment about the defendant's productiveness in the United States. As you've pointed out, Your Honor, the judge was very aware of the record and he was very aware of what the defendant was doing in the United States. That doesn't seem to be exactly what the judge said. Speaking of a record of employment, the judge said, and I quote, I don't see that in the pre-sentence report. But it is in the pre-sentence report. And then said, I don't see any record, any record of employment in the United States. But there is a record in the pre-sentence report. Well, is that a record of what the defendant said or is there any corroboration? Could the judge have been saying there's no physical corroborative evidence that showed that the defendant had worked in the United States? Is that what he was talking about? Yes. So, that is the distinguishing point that we are making, Your Honor, is that there was no corroborating information. And for a man who had been in the country for decades, there should have been some kind of information about specific employment or durations of time that he had been employed. Those four jobs that he listed, those could have been for a week, a month, six months, a year. And it still would not have been this robust employment as the defense would like to characterize it. Well, what do we do about the fact that in the district court statement, he says, he's talking about the pre-sentence report. It talks about your employment while you're in custody. It talks about your employment in Mexico. And then it goes on. And more troubling, what I see, is his criminal history. But he does go through the two parts of the PSR, which talks about the employment in custody in Mexico. And it's like he didn't, the judge didn't turn the page, which then has a statement about what he did while he was in California. As to the two points about him working in Mexico and in the correctional facility, he didn't have any other information. That was the information he had about what the defendant was doing with his time in Mexico and in the correctional facility. It was just in the, it was, that was all the information in the record he had was from the PSR. He had a lot more details about what the defendant was doing in the United States from the whole record, including the defendant's prior criminal convictions. And one thing we haven't talked about is the defendant's statement to the court at the sentencing hearing, where the defendant says, I'm going to keep coming back to this country. You can, he essentially says, you can deport me as many times as you want to, and I'm going to keep coming back. And the district court actually asked him blatantly, are you saying that no matter what sentence I impose, you're going to come back to the country? And the defendant said, that's correct. And when the court started going over the 3553A factors, that was the primary thing, that was the primary factor that he started with was the fact that the defendant, he had a deterrence issue, and a need to promote respect for the law, and a need to protect the public safety, because this defendant was deported all the way, he was deported all the way to El Salvador, and less than seven months later, he's back. Are you saying that in light of what the court said there, and what the defendant said, that the court was in effect applying without saying so the 3553A factors to keep the sentence at the lowest guideline, but didn't go any farther down because there were other factors, in this case, the statement by the defendant, I'm going to keep coming back no matter what you do, as evidence of willful disregard of the law? Yes, Your Honor, and I would say that when the defendant, when the district court said that I find that you have a willingness to disregard the laws of the country, I think that that goes to the defendant's statement at that sentencing hearing, that he's going to keep breaking the law no matter what the court does in that scenario. As far as the Martinez-Lopez case, the one thing I would say about that is I think that it is resolved with the Murillo case, and as well as with the Ocampo case that I cited in my 28J letter. I'm happy to answer any other questions that the court may have. So I gather with Murillo, Alvarado, and Martinez-Lopez, there's no question this is the divisible statute. We apply the modified categorical analysis, right? That's correct, Your Honor. Okay. Any other questions by my colleague? Do you have anything more? If there are no questions, I'll submit on the briefs, and I'd request that the district court sentence be affirmed. Thank you very much. Counsel, you have some rebuttal time. Thank you. I'd like to dive into the legal issue, if I could, with my remaining time. The court is bound, we are all bound as a matter of stare decisis by the decision yesterday, but it's important to understand what that holding is. The holding is it extends Martinez-Lopez's reliance on the Adams case to 11351. The difference in our case, Your Honors, is that we have given the court a detailed chronology of California case law, going back to the California Supreme Court's decision in 1971 and the Newman case, and all the cases from there to 2007 in Montero. In those decades, the California appellate courts, including the California Supreme Court, and enumerating the elements of possession for sale under California law, never specifically identified controlled substances as elements of the offense. So under Mathis, and Mathis's emphasis on certainty, we have tension in California case law, to be honest, Your Honors. We have the Adams line of cases, which says under Penal Code 654, we would treat it as an element. But under the definitive California case law we've cited, that actually enumerates the elements of possession for sale, the California appellate courts, including the California Supreme Court, have never done that. So when we have this tension in the law, assuming we're bound by the decision yesterday, which of course we are, on that aspect of the holding, it still doesn't meet Taylor and Mathis's demand for certainty, because we have pretty clear tension in California case law. For Taylor analysis, what are the means? What are the elements? Well, what are you arguing this panel should do, therefore? There's two things, Your Honor. One is we could either we could, what I've asked the Court to do is use our arguments, which Maria, I looked at the ECF yesterday, they didn't make our arguments. So you could use our arguments, which are stronger, forgive the immodesty, as a basis to distinguish Maria Alvarado. As an alternative basis, Your Honor, I would ask the Court to Distinguish or just rule differently? Well, if you disagree with me, Your Honor, and you feel bound to affirm, I would ask the Court to make an en banc call, because we've identified decades of California case law that are in tension with the Adams rationale. And so if we need an en banc call, then that would be my alternative argument, is to make an en banc call to clarify based on the arguments we've made, which Maria Alvarado did not. Thank you very much, counsel. We appreciate it. Thanks to both counsel. The case just argued is submitted.
judges: M. Smith, Ikuta, Bates